**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 16-233-UNA |
| ) | |
| v. ) | |
| ) | |
| HALLIBURTON CO. ) | |
| and BAKER HUGHES INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION TO TRANSFER VENUE**

Young Conaway Stargatt
   & Taylor, LLP

David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
James M. Yoch, Jr. (No. 5251)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
agaza@ycst.com
jyoch@ycst.com
swilson@ycst.com

OF COUNSEL:

Richard G. Parker
Edward D. Hassi
Katrina Robson
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
rparker@omm.com
ehassi@omm.com
krobson@omm.com


Stephen Weissman
Joseph A. Ostoyich
James G. Kress
Thomas J. Dillickrath
William C. Lavery
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
stephen.weissman@bakerbotts.com
joseph.ostoyich@bakerbotts.com
james.kress@bakerbotts.com
thomas.dillickrath@bakerbotts.com
william.lavery@bakerbotts.com


*Attorneys for Defendant
Halliburton Company*

Morris, Nichols, Arsht
   & Tunnell LLP

S. Mark Hurd (No. 3297)
Ethan H. Townsend (No. 5813)
1201 North Market Street
Wilmington, DE  19899
(302) 658-9200
shurd@mnat.com
etownsend@mnat.com

OF COUNSEL:

Molly S. Boast
Charles C. Platt
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
 (212) 230-8800
molly.boast@wilmerhale.com
charles.platt@wilmerhale.com


Heather Tewksbury
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6134
heather.tewksbury@wilmerhale.com


Hartmut Schneider
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6948
hartmut.schneider@wilmerhale.com

*Attorneys for Defendant
Baker Hughes Incorporated*


Dated: April 8, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

NATURE AND STAGE OF PROCEEDINGS ............................................................1

SUMMARY OF THE ARGUMENT ...........................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT ..................................................................................................................4

I.      THE COURT SHOULD TRANSFER THIS MATTER TO THE SOUTHERN
DISTRICT OF TEXAS, HOUSTON DIVISION ................................................4

      A.     This Action Could Have Been Brought in the Southern District of Texas .............5

      B.     The Balance of Convenience of the Parties and Witnesses and the Interest
of Justice Favor Transfer to the Southern District of Texas ...................................6

              1.     The Private Interests of the Parties And Witnesses Weigh in Favor
of Transfer ....................................................................................................6

              2.     The Public Interest Weighs in Favor of Transfer .......................................13

CONCLUSION ............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Roxane Labs, Inc.*,
    C.A. No. 12-457, 2013 WL 2322770 (D. Del. May 28, 2013).................................................15

*Credit Bureau Reports, Inc. v. Retail Credit Co.*,
    358 F. Supp. 780 (S.D. Tex. 1971) ......................................................................................14

*Cruise Control Tech. LLC v. Chrysler Group LLC*,
    2014 WL 1304820 (D. Del. 2014) .......................................................................6, 10, 13, 14

*FTC v. Cephalon, Inc.*,
    551 F. Supp. 2d 21 (D.D.C. 2008) .................................................................... *passim*

*FTC v. Graco Inc.*,
    C.A. No. 11-02239, 2012 WL 3584683 (D.D.C. Jan. 26, 2012) ..................................... *passim*

*In re Apple*,
    602 F.3d 909 (8th Cir. 2010) ..........................................................................................9, 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)............................................................................................14

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987).............................................................................................14

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011)......................................................................................7, 8, 13

*Intrepid Potash-N. Mex., LLC v. Dep't of Interior*,
    669 F. Supp. 2d 88 (D.D.C. 2009) .........................................................................................9

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)........................................................................................ *passim*

*Koh v. Microtek Int'l, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ...................................................................................10

*Memory Integrity, LLC v. Intel Corp.*,
    C.A. No. 13-1804, 2015 WL 632026 (D. Del. Feb. 13, 2015) ...........................................5, 13

*Qinetiq Ltd. v. Oclaro, Inc.*,
    C.A. No. 09-372, 2009 WL 5173705 (D. Del. Dec. 18, 2009)...............................................12

*Ricoh Co., Ltd. v. Aeroflex, Inc.*,
   279 F. Supp. 2d 554 (D. Del. 2003)..........................................................................8

*Ricoh Co. v. Honeywell, Inc.*,
   817 F. Supp. 473 (D.N.J. 1993) ...............................................................................5

*Schmidt v. Am. Inst. of Physics*,
   322 F. Supp. 2d 28 (D.D.C. 2004) ...............................................................7, 10, 13

*SEC v. Ernst & Young*,
   775 F. Supp. 411 (D.D.C. 1991) ...................................................................8, 10, 13

*SEC v. Savoy Indus.*,
   587 F.2d 1149 (D.C. Cir. 1978) ..............................................................................4

*Sierra Club v. Flowers*,
   276 F. Supp. 2d 62 (D.D.C. 2003) .........................................................................14

*Smart Audio Techs., L.L.C. v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012).........................................................................5

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ...................................................................................................4

*United States v. Franklin Elec. Co.*,
   130 F. Supp. 2d 1025 (W.D. Wis. 2000) ...............................................................14

*United States v. Microsemi Corp.*,
   C.A. No. 08-1311, 2009 WL 577491 (E.D. Va. Mar. 4, 2009) ................................4

*United States v. Nat'l City Lines, Inc.*,
   337 U.S. 78 (1949)...................................................................................................4

*United States v. Oracle*,
   331 F. Supp. 2d 1098 (N.D. Cal. 2004) .................................................................14

**STATUTES**

15 U.S.C. § 18.............................................................................................................3

15 U.S.C. § 18a...........................................................................................................3

15 U.S.C. § 22.......................................................................................................5, 14

28 U.S.C. § 1404(a) .................................................................................................1, 4

## NATURE AND STAGE OF PROCEEDINGS

On April 6, 2016, the United States Department of Justice ("DOJ") filed, in this Court, a complaint against Halliburton Company ("Halliburton") and Baker Hughes Incorporated ("BHI") (collectively, "Defendants"), companies involved in the oil field services business and headquartered in Texas.  As recognized in the complaint, none of Defendants' operations occur in Delaware, or have any direct relation to Delaware.

Concurrently with this Opening Brief in Support, Defendants have filed a Motion to Transfer Venue requesting that this Court enter an Order transferring this action to the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a).

## SUMMARY OF THE ARGUMENT

1.  Instead of bringing this action in the most obvious forum, the DOJ filed suit in Delaware, where the only connection is corporate domicile. The allegations in the complaint are neither based on nor directed at business conducted by Defendants or any customer in Delaware. In bringing suit in Delaware, the DOJ identifies no basis why the convenience of either the government or Defendants would be served by the prosecution of this case in this District, and ignores the fact that no customer witnesses, whose testimony will be highly relevant, are located in this District.  There is no reasonable basis for the government to maintain its choice of forum here.

2.  By contrast, the Southern District of Texas is the operational home to both Halliburton and BHI.  It is where they are headquartered and where they negotiated this merger. Nearly all of the documents and witnesses that are potentially relevant to this case are located in or around Houston.  In addition, the vast majority of the non-parties likely to be involved in this litigation, whether customers or competitors, are located in or around Houston.  This case

belongs in the Southern District of Texas.

3. The "public interest of justice" likewise weighs heavily in favor of transfer to the Southern District of Texas. The oil industry is a mainstay of the Texas economy; therefore, Texas has a strong public interest in addressing disputes such as this one. By contrast, Delaware has little (if any) interest in regulating this transaction. In addition, the District of Delaware courts already carry a heavy docket whereas the Southern District of Texas has a significantly less congested docket. Accordingly, this dispute should be transferred to Texas where a civil case such as this can be resolved almost 40 percent faster than in the District of Delaware. With looming deadlines that could adversely impact the closing of the transaction, a fast trial is of particular importance for this action. All of these factors strongly support the transfer of this action to the Southern District of Texas.

## STATEMENT OF FACTS

Halliburton and BHI are providers of products and services to the energy industry, including the upstream oil and gas segment. Though incorporated in Delaware, both companies are headquartered and have their principal places of business in Houston, Texas, which include substantial operations within the State of Texas such as drilling and formation evaluation, well construction and completion, and optimizing production through the life of the field. Declaration of Christopher J. Bellotti ("Bellotti Decl.") ¶ 5; Declaration of Lee Whitley ("Whitley Decl.") ¶ 4, both of which were filed contemporaneously herewith. Combined, Halliburton and BHI employ approximately 17,000 people within the State of Texas. Bellotti Decl. ¶ 3; Whitley Decl. ¶ 5. Many relevant current and former employees involved in the transaction are located in Houston, as are the original documents and information related to the transaction. Bellotti Decl. ¶¶ 8-9; Whitley Decl. ¶ 8. Many of Defendants' largest customers and other potential third-party witnesses also have headquarters in the Houston area. *See, e.g.*, Bellotti Decl. ¶ 7; Whitley Decl.

2

¶ 7.

Defendants do not own any property, nor do they have any business locations, within the State of Delaware.  Bellotti Decl. ¶¶ 10-11; Whitley Decl. ¶ 9.  BHI does not transact any business or generate any revenue within Delaware, and Halliburton transacts only minimal business unrelated to the issues in this case.[1]  Bellotti Decl. ¶¶ 10-11; Whitley Decl. ¶ 9.  Halliburton does not have any employees who live in Delaware and BHI has only three.  Bellotti Decl. ¶¶ 10; Whitley Decl. ¶ 9.  None of the documents or other information related to the transaction is located in Delaware.  Bellotti Decl. ¶ 8; Whitley Decl. ¶ 10.

On November 17, 2014, Defendants entered into a merger agreement under which Halliburton would acquire BHI.  Negotiations, drafting, and the execution of the merger agreement took place in Houston.  Bellotti Decl. ¶ 8.  The transaction received shareholder approvals from both companies on March 27, 2015.  Defendants submitted their Hart-Scott-Rodino ("HSR") filing on December 8, 2014, as required under the HSR Act, 15 U.S.C. § 18a, and immediately began to engage with the DOJ.  For the past 16 months Defendants have fully cooperated with the DOJ, providing information aimed at furthering its understanding of the industry and the parties' businesses.

On April 6, 2016, the DOJ filed a complaint alleging that the proposed transaction violates Section 7 of the Clayton Act, 15 U.S.C. § 18.  *See generally* D.I. 1 ("Compl.").  Specifically, the DOJ alleges that the transaction would substantially lessen competition in certain product and service lines and that Defendants' proposed remedy is inadequate to resolve these risks.  *Id*. ¶ 1-10.  Defendants deny the allegations of the DOJ and contend that any

---

[1] In the years 2014-2015, Halliburton had sales of only $505,968, to two customers, in Delaware (including products not at issue in this litigation), which amounted to a mere 0.002% of its North American revenues.  Bellotti Decl. ¶ 12.

litigation regarding DOJ's concerns with the proposed merger should be resolved in the Southern District of Texas, the true epicenter of the activities leading up to and resulting in the merger agreement.

## ARGUMENT

### I.     THE COURT SHOULD TRANSFER THIS MATTER TO THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

It is firmly within the district court's discretion to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) ("[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."); *FTC v. Graco Inc.*, C.A. No. 11-cv-02239, 2012 WL 3584683, at *4 (D.D.C. Jan. 26, 2012) (holding that in a merger challenge, "[e]ven where venue is proper, a district court has 'broad discretion' to order transfer of venue pursuant to 28 U.S.C. § 1404(a)."). In adjudicating motions to transfer, "the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." *Stewart,* 487 U.S. at 29 (citing *SEC v. Savoy Indus.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).

Courts have consistently recognized that traditional Section 1404(a) standards apply in antitrust cases brought by the government. *See United States v. Nat'l City Lines, Inc.*, 337 U.S. 78, 84 (1949). In recent years, district courts have transferred several antitrust cases to more suitable venues under Section 1404(a) after federal agencies initially filed them in inconvenient fora. *See, e.g.*, *Graco*, 2012 WL 3584683, at *7 (holding that a "more appropriate forum" existed where all relevant acts occurred and the "evidence and sources of proof [were] located"); *United States v. Microsemi Corp.*, C.A. No. 1:08-cv-1311, 2009 WL 577491, at *7–10 (E.D. Va.

Mar. 4, 2009) (transferring merger challenge brought by DOJ in Virginia to California for the convenience of witnesses, noting that "deference has not been extended" to the government's choice of district "when the controversy itself had no meaningful ties to that forum"); *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 27-29 (D.D.C. 2008) (transferring action because the FTC's antitrust case had "no meaningful connection" to Washington, D.C.).

Courts in the Third Circuit perform a two-step inquiry to evaluate whether transfer is warranted. First, the Court must determine whether "the action could have been brought in the proposed transferee venue[.]" *Memory Integrity, LLC v. Intel Corp.*, C.A. No. 13-1804-GMS, 2015 WL 632026, at *2 (D. Del. Feb. 13, 2015) (granting motion to transfer); *see Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012) (Sleet, C.J.). Second, the Court must evaluate "whether transfer to a different forum would best serve the interests of justice and convenience." *Memory Integrity*, 2015 WL 632026, at *2-3; *see also Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993). Here, Defendants establish both.

### A.    This Action Could Have Been Brought in the Southern District of Texas

The Clayton Act's venue provision provides, in relevant part, that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought . . . in the judicial district whereof it is an inhabitant [and] any district wherein it may be found or transacts business." 15 U.S.C. § 22. Halliburton and BHI are both found and transact business in the Southern District of Texas. Bellotti Decl. ¶¶ 1-3; Whitley Decl. ¶¶ 1-4. Defendants' connections to that venue make it plainly evident that the DOJ could have filed its complaint in the Southern District of Texas. *Smart Audio Techs.*, 910 F. Supp. at 724; *see also Graco*, 2012 WL 3584683, at *4 (finding it "undisputed that this action could have been brought in the District of Minnesota as all the defendants are found in and transact business [there]"); *Cephalon*, 551 F. Supp. 2d at

25 (finding it "plainly evident" that the FTC could have filed its suit in the Eastern District of Pennsylvania where Cephalon transacted and had its principal place of business).

### B. The Balance of Convenience of the Parties and Witnesses and the Interest of Justice Favor Transfer to the Southern District of Texas

Courts have recognized that transfer may be warranted where the transferee venue is more convenient for the parties and witnesses, and where the interest of justice is best served. *See Cruise Control Tech. LLC v. Chrysler Group LLC*, C.A. No. 12–1755–GMS (et. al.), 2014 WL 1304820, at *3-4 (D. Del. 2014) (finding the parties' convenience weighed in favor of transfer when the defendants had no manufacturing, development, or research in Delaware).  In undertaking this analysis, "the Third Circuit has instructed district courts to look to the various private and public interests protected by Section 1404(a)." *Id.* at *2 (citing *Jumara*, 55 F.3d at 879).  The private interest factors that courts consider are (1) whether transfer would be more convenient for the parties and witnesses; (2) whether the relevant evidence is located in the transferee court; (3) whether the events giving rise to the suit took place in the transferee court; and (4) the parties' forum preferences.  *Jumara*, 55 F.3d at 879-80.  The public interest factors are (1) the local interest in deciding local controversies at home; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; and (3) the relative administrative difficulty in the two fora resulting from court congestion.  *Id.*; *see also Graco*, 2012 WL 3584683, at *4; *Montgomery*, 532 F. Supp. 2d at 34; *Cephalon*, 551 F. Supp. 2d at 25.  As set forth below, all relevant factors related to the private interests of parties and witnesses, as well as the public interest of justice, support transfer to the Southern District of Texas.

### 1. The Private Interests of the Parties and Witnesses Weigh in Favor of Transfer

Any deference to the DOJ's choice of forum "is mitigated where the plaintiff['s] choice

of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Graco*, 2012 WL 3584683, at *5 ("[T]he District of Columbia has no meaningful connection to this action. Accordingly, plaintiff's choice of forum is not entitled to great deference."). That is precisely the situation here. This matter has no meaningful ties to the District of Delaware. None of the facts in this case arose in Delaware, and none of the potentially relevant witnesses or other sources of proof are located here. Even as a general matter, Halliburton does not have any employees in Delaware, and BHI has only three that live in Delaware but provide services to customers elsewhere.[2] Bellotti Decl. ¶ 10; Whitley Decl. ¶¶ 3, 5. BHI does not transact any business or generate any revenue in Delaware, and Halliburton transacts only minimal business unrelated to the issues in this case. Bellotti Decl. ¶ 12; ¶¶ 10-12**;** Whitley Decl. ¶ 9. Neither party maintains an address or any business locations in Delaware. Bellotti Decl. ¶¶ 10-11; Whitley Decl. ¶ 9. Accordingly, the DOJ's decision to file in Delaware is entitled to minimal deference, if any.[3]

Courts have held that a party's state of incorporation is not dispositive in the transfer analysis, cautioning that "heavy reliance on the fact that [defendant] was incorporated in Delaware [is] inappropriate" while rejecting the plaintiff's selection of Delaware as the venue when "[n]early all of [defendant's] 130 employees work[ed elsewhere], and none work[ed] in Delaware." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222, 1223 (Fed. Cir. 2011). This is particularly true where, as here, the witnesses and sources of proof are thousands of miles

---

[2] Three BHI employees reside in Delaware, but these employees either work from their homes or work in Pennsylvania. Whitley Decl. ¶ 9.

[3] *See Montgomery*, 532 F. Supp. at 33 ("[W]hen the connection between the controversy, plaintiff, and the forum are attenuated and lack a meaningful factual nexus, less deference is given" to plaintiff's choice of forum); *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 33 (D.D.C. 2004) ("[D]eference [to Plaintiff's choice of forum] is mitigated . . . [where the] forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'") (citations omitted).

away.  *Id.*  The fact that Halliburton and BHI are incorporated in Delaware is insufficient as a matter of law.  As the *Link_A_Media* court observed: "Neither § 1404 nor *Jumara* [a Third Circuit case] list a party's state of incorporation as a factor for a venue inquiry. It is certainly not a dispositive fact in the venue transfer analysis."  662 F.3d at 1224 (citing *Jumara*, 55 F.3d at 879).  And here, Defendants' state of incorporation has no relationship whatsoever to the operative facts giving rise to this dispute.  *See Ricoh Co., Ltd. v. Aeroflex, Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (Sleet, C.J.) (ordering transfer because "no party maintains any facilities, personnel, or documents in Delaware . . . [and] no relevant third party witnesses . . . reside in Delaware"); *see SEC v. Ernst & Young*, 775 F. Supp. 411, 414, 416 (D.D.C. 1991) ("Texas is the site of nearly all of the facts underlying the filings here.  Despite the presumption in favor of plaintiff's forum choice, that choice should not be allowed to stand where the forum chosen bears virtually no relation to the occurrences giving rise to the cause of action.").  Because the only connection between this case and the District of Delaware is Defendants' state of incorporation, the DOJ's selection of this forum is entitled to minimal weight at best.

In contrast, all the material events giving rise to this proceeding, and the facts relating to the issues that are in dispute in this case, arose in the Southern District of Texas.  For example,

- both Halliburton and BHI are headquartered in Houston, Texas, and have done business in Texas for decades;

- a substantial part of both parties' businesses related to the transaction, including major contracts, manufacturing operations, customers, and competitors, are in Houston, Texas;[4]

---

[4] Most of the major potential third-party witnesses—a who's who of oil and gas exploration and production—are headquartered or have a major presence in and around Houston, Texas, including customers such as Shell, ConocoPhillips, ExxonMobil, Marathon Oil, and Southwestern Energy, and significant competing oil-field services providers like Schlumberger, National Oil-Well Varco, Weatherford International, FMC Technologies, and Oil States International.  Bellotti Decl. ¶ 7; Whitley Decl. ¶ 7.

- the majority of relevant current and former employees—including Defendants' executives and the management teams that negotiated the proposed transaction—and their evidence are located in Houston, Texas;[5]

- the majority of relevant potential third-party witnesses and their evidence are located in Houston, Texas or nearby; and

- the merger agreement that is being challenged was negotiated, drafted, and executed in Houston, Texas.

*See generally* Bellotti Decl; Whitley Decl.  Because Houston is at the center of this litigation, this factor weighs heavily in favor of transferring this case to the Southern District of Texas.  *See In re Apple*, 602 F.3d 909, 914 (8th Cir. 2010) (granting writ of mandamus ordering transfer to Northern District of California in part because the "'alleged wrongs' occurred in Northern California"); *Intrepid Potash-N. Mex., LLC v. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009) ("Transfer is supported when the material events that constitute the factual predicate for the plaintiff's claims occurred in the transferee district.") (internal quotation marks omitted).

Where, as here, the majority of the material events underlying the action occurred in, and the majority of the potential witnesses are located in, Defendants' preferred forum, courts have consistently held that *Defendants'* preferred forum is entitled to deference.  In *Graco*, for example, the court transferred an antitrust challenge to a merger brought by the FTC to the District of Minnesota "because the District of Columbia ha[d] no meaningful connection to the parties or the subject matter of the controversy" and "[n]o other factor favor[ed] retaining venue in the District of Columbia."   2012 WL 3584683, at *7; *Cephalon*, 551 F. Supp. 2d at 26 (concluding that deference should be afforded to the defendant's home forum because "Cephalon's primary base of operations is in the Eastern District of Pennsylvania" and "[n]one of the negotiations that led to the settlement agreements at the heart of this controversy took

---

[5] Indeed, DOJ attorneys traveled to Houston to take the vast majority of their acquisition-related depositions.  Bellotti Decl. ¶ 9; Whitley Decl. ¶ 6.

place in, or were in any other way related to, the District."); *Schmidt*, 322 F. Supp. 2d at 34 (finding that the defendant's choice of forum was more appropriate because "a majority of material events occurred" there and because "relevant documents, witnesses and [defendant's] corporate offices are in [defendant's] choice of forum.").

A factor of particular significance in this case is the convenience of witnesses, which "is often dispositive in transfer decisions." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003); *see also Cruise Control*, 2014 WL 1304820 at *4-5 ("[E]ven regarding those Defendants who are incorporated in Delaware, the Eastern District of Michigan still has a stronger interest to this litigation because it is where the claims arose and where the employees and known material witnesses are located"); *Cephalon*, 551 F. Supp. 2d at 28 (holding witness convenience weighed in favor of transfer); *Ernst & Young*, 775 F. Supp. at 414 (granting venue transfer in part because, "for the majority of witnesses, trial in Texas would be less burdensome than trial [in the District of Columbia]"); *Apple*, 602 F.3d at 913 ("If Apple's California witnesses were required to travel to Arkansas, Apple would likely incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work," while the "witnesses will suffer the personal costs associated with being away from work, family, and community.") (internal quotation marks omitted).   The Southern District of Texas is a substantially more convenient location for all non-party and party witnesses expected to be called in this case.  The categories of witnesses who might be called to testify include:

- High-ranking officers of Halliburton and BHI, such as the Chief Executive Officers and Chief Integration Officers;

- Vice Presidents for the relevant product service lines such as drill bits, drilling fluids, and cementing;

- Vice Presidents for the relevant geographic regions (both onshore and offshore); and

- Third party executives and other third party employees from many of Defendants' most significant customers and competitors.

The vast majority of these witnesses reside in Houston or nearby—approximately 1,500 miles from Wilmington, Delaware. *See* Bellotti Decl. ¶¶ 5-7, 9; Whitley Decl. ¶¶ 4-7. Maintaining this action in Delaware would be unduly and unnecessarily burdensome for key employees of Halliburton and BHI (as well as non-parties like their competitors), who would be required to fly across the country in order to testify during various phases of the litigation. It would also be equally burdensome for their customers, also non-parties, for whom Houston is a far more convenient location, as Table 1 illustrates.[6]

---

[6] Table 1 shows the distance from corporate headquarters to Houston, Texas and Wilmington, Delaware, for Defendants' major North American customers in 2014. All distances are approximate.

**TABLE 1**

| Customer (Corporate Headquarters) | Distance to Houston (Miles) | Distance to Wilmington, DE (Miles) |
|---|---|---|
| British Petroleum (Houston, TX) | 0 | 1,500 |
| Conoco Phillips (Houston, TX) | 0 | 1,500 |
| Marathon Oil (Houston, TX) | 0 | 1,500 |
| Noble Energy (Houston, TX) | 0 | 1,500 |
| Occidental (Houston, TX) | 0 | 1,500 |
| Shell (Houston, TX) | 0 | 1,500 |
| Anadarko (The Woodlands, TX) | 25 | 1,500 |
| ExxonMobil (Irving, TX) | 250 | 1,500 |
| Devon Energy (Oklahoma City, OK) | 400 | 1,400 |
| SandRidge Energy (Oklahoma City, OK) | 400 | 1,400 |
| COG Operating (Midland, TX) | 450 | 1,800 |
| Questar (Salt Lake City, UT) | 1,200 | 2,100 |
| Hess (New York City, NY) | 1,400 | 100 |
| Chevron (San Ramon, CA) | 1,600 | 2,850 |

Particularly in light of the anticipated fast-paced schedule of this action, the extensive travel that would be required for witnesses from these companies to testify in Delaware is likely to lead to a substantial disruption in these non-parties' businesses. By minimizing the travel that would be required of the witnesses, a transfer to the Southern District of Texas would mitigate this disruption. *See Qinetiq Ltd. v. Oclaro, Inc.*, C.A. No. 09-372-JAP, 2009 WL 5173705, at *1, 4 (D. Del. Dec. 18, 2009) (transferring case to the Northern District of California where "[n]early all of [the defendant's] witnesses . . . [were] located.").

Even in cases involving a much smaller differential in travel distances, courts have granted transfers based, in part, on witness convenience. *See, e.g.*, *Cephalon*, 551 F. Supp. 2d at 28 (noting that the defendant's "corporate headquarters [was] located [in another district] as well as many of the material fact witnesses" and finding that the witness convenience factor weighed

12

in favor of transfer to the Eastern District of Pennsylvania); *Schmidt*, 322 F. Supp. 2d at 31–32 (transferring matter to the District of Maryland based largely on the convenience factor and observing that the plaintiff did not argue that a new forum would prevent any witnesses from testifying).  Where, as here, the transferee forum would be significantly more convenient for nearly all of the witnesses, this factor tips decidedly in favor of transfer.

Finally, access to relevant evidence weighs in favor of transfer of this case.  *See Memory Integrity*, 2015 WL 632026, at *8.  Because both Halliburton and BHI are located in Houston, Texas, many of the original documents and information related to the transaction are located there, as are the witnesses who can authenticate them.  *See* Bellotti Decl. ¶¶ 8-9; Whitley Decl. ¶ 8.  While DOJ staff have obtained numerous documents electronically, and "technological advances have made transportation of electronic evidence far less onerous, the court cannot simply ignore the location of the relevant books and records."  *See Memory Integrity*, 2015 WL 632026, at *8.  "The mere presence of certain documents in [another forum] does not change the location of the facts underlying this action."  *Ernst & Young*, 775 F. Supp. at 415.   The ease of access to sources of proof in Texas therefore reinforces the other factors favoring transfer.  *In re Link_A_Media*, 662 F.3d at 1224; *see Graco*, 2012 WL 3584683, at *6 (finding that "technological advances do not obviate the access to evidence inquiry entirely" because the need to refer to original documents or evidence may arise during litigation).

### 2.       The Public Interest Weighs in Favor of Transfer

The three public interest factors courts consider for motions to transfer are (1) the local interest in deciding local controversies at home; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; and (3) the relative administrative difficulty in the two fora resulting from court congestion.  *Jumara*, 55 F.3d at 879-80; *see also Cruise Control*, 2014 WL 1304820 at *4-5.  The first public interest factor is neutral in this case, as the same federal

antitrust laws govern regardless of the jurisdiction in which the litigation proceeds. *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70, n.6 (D.D.C. 2003) ("[T]he first public-interest factor is of little significance . . . [if] the plaintiffs base all of their claims on federal . . . law, and courts follow the principle that the transferee federal court is competent to decide federal issues correctly").[7]

The second public interest factor—the relative congestion of each court—weighs heavily in favor of transfer. For example, the court in *Graco* held that "relative docket congestion and potential speed of resolution is an appropriate factor to be considered by district courts in the motion to transfer analysis." 2012 WL 3584683, at *6; *see also Cruise Control*, 2014 WL 1304820 at *5 (granting motion to transfer in part because "Delaware courts' dockets are far more congested on average than those of courts in the Eastern District of Michigan."). Here, the Southern District of Texas has both a shorter length of time from filing to disposition for civil cases, and resolves civil cases from filing to trial 40 percent faster than the District of Delaware. *See* Federal Court Management Statistics, District Courts - Profiles, 2015, *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3. This relative docket congestion is particularly crucial here where an expeditious trial is imperative. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) ("To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may

---

[7] Congress did not create specialized courts to adjudicate antitrust merger challenges brought by the DOJ. Rather, *all* federal district courts have jurisdiction to hear cases such as this, provided that the Clayton Act's broad venue provision is satisfied. *See* 15 U.S.C. § 22; *see also*, *e.g.*, *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (Ginsburg, J.) ("The federal courts have not only the power but the duty to decide issues of federal law correctly.") (quotations and alterations omitted). Indeed, Section 7, Clayton Act challenges have been decided by federal courts throughout the nation, including in the Southern District of Texas. *See*, *e.g.*, *United States v. Oracle*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004); *United States v. Franklin Elec. Co.*, 130 F. Supp. 2d 1025 (W.D. Wis. 2000); *Credit Bureau Reports, Inc. v. Retail Credit Co.*, 358 F. Supp. 780 (S.D. Tex. 1971).

be a factor.").

The final public interest factor, the local interest in deciding local controversies, weighs in favor of transfer.  In *Graco*, the court explained, "The Asset Purchase Agreement at issue was negotiated, drafted, and executed in [Minnesota].  Graco is headquartered in [Minnesota]. Based on these facts, the Court finds that transfer is supported by a local interest in having this matter resolved in a Minnesota court."  2012 WL 3584683, at *6; *see also Abbott Labs. v. Roxane Labs, Inc.*, C.A. No. 12-457-RGA-CJB, 2013 WL 2322770, at *26 (D. Del. May 28, 2013) (finding that "local interests" weighed in favor of transfer to the Southern District of Ohio because the products at issue were developed there by Ohio employees "whose livelihood[s] could be affected by the outcome of this litigation."), *adopted*, D.I. 65 (D. Del. Jun. 18, 2013) (Andrews, J.).  The same reasoning applies here.  The merger at issue was "negotiated, drafted, and executed" in Houston.  *Id.*; Bellotti Decl. ¶ 8.  Both parties are headquartered in Houston, Texas. Halliburton's and BHI's facilities are likewise predominantly located in Houston, Texas, with nearly 17,000 employees in the State of Texas.  *See* Bellotti Decl. ¶ 3; Whitley Decl. ¶ 5.  This is a transaction that directly affects two Houston, Texas-based corporations, and is of great "local interest" and importance to the State of Texas.  By contrast, this controversy is of little local interest (if any) to the District of Delaware.  Accordingly, the public interest factors also weigh in favor of transferring this action to the Southern District of Texas, Houston Division.

## CONCLUSION

For the reasons stated herein, Defendants respectfully submit that their motion should be granted.

Dated:  April 8, 2016

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

*/s/ Anne Shea Gaza*
David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
James M. Yoch, Jr. (No. 5251)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
agaza@ycst.com
jyoch@ycst.com
swilson@ycst.com

OF COUNSEL:

Richard G. Parker
Edward D. Hassi
Katrina Robson
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
rparker@omm.com
ehassi@omm.com
krobson@omm.com

Stephen Weissman
Joseph A. Ostoyich
James G. Kress
Thomas J. Dillickrath
William C. Lavery
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
stephen.weissman@bakerbotts.com
joseph.ostoyich@bakerbotts.com
james.kress@bakerbotts.com
thomas.dillickrath@bakerbotts.com
william.lavery@bakerbotts.com

*Attorneys for Defendant*
*Halliburton Company*

MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP

*/s/ S. Mark Hurd*
S. Mark Hurd (No. 3297)
Ethan H. Townsend (No. 5813)
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200
shurd@mnat.com
etownsend@mnat.com

OF COUNSEL:

Molly S. Boast
Charles C. Platt
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
molly.boast@wilmerhale.com
charles.platt@wilmerhale.com

Heather Tewksbury
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6134
heather.tewksbury@wilmerhale.com

Hartmut Schneider
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6948
hartmut.schneider@wilmerhale.com

*Attorneys for Defendant*
*Baker Hughes Incorporated*

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, Esquire, hereby certify that on April 8, 2016, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jennifer Lynne Hall
U.S. Attorney's Office
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046
*jennifer.hall@usdoj.gov*

Blake W. Rushforth
Angela L. Hughes
U.S. Department of Justice
Antitrust Division
450 Fifth St., NW, Suite 8000
Washington, DC 20530
*blake.rushforth@usdoj.gov*
*angela.hughes@usdoj.gov*

*Attorneys for Plaintiff*

I further certify that on April 8, 2016, I caused a copy of the foregoing document to be served via electronic mail on the above-listed counsel and on the following:

David I. Gelfand
Deputy Assistant Attorney General
U.S. Department of Justice
Antitrust Division
450 Fifth St., NW, Suite 8000
Washington, DC 20530
*david.gelfand@usdoj.gov*

*Attorneys for Plaintiff*

01:18548222.1

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Anne Shea Gaza*
David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
James M. Yoch, Jr. (No. 5251)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
agaza@ycst.com
jyoch@ycst.com
swilson@ycst.com

*Attorneys for Defendant Halliburton Company,*
*on behalf of all Defendants*