# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              *Plaintiff*,<br><br>     v.<br><br>HALLIBURTON CO.,<br><br>and<br><br>BAKER HUGHES INC.,<br><br>                              *Defendants*. | Civil Action No.: 1:16-cv-00233 |

## UNITED STATES' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

David I. Gelfand
John R. Read
Craig W. Conrath
Bennett J. Matelson
Leah E. Graham
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Washington, DC 20530
Telephone: (202) 514-0731
Email: david.gelfand@usdoj.gov

Jennifer Hall (#5122)
Assistant United States Attorney
United States Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19801
Telephone: (302) 573-6277
Email: jennifer.hall@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

Dated:  April 13, 2016

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 3

STATEMENT OF FACTS ............................................................................................ 5

ARGUMENT ............................................................................................................... 7

 I.  Defendants Must Overcome a Heavy Burden to Set Aside the Substantial Deference Accorded to Plaintiff's Choice of Forum ............................................. 7

 II.  The Private Interest Factors Weigh Against Transfer ............................................ 8

   A.  The United States' Choice of Forum is Accorded Substantial Deference ...................................................................................................... 8

   B.  Defendants' Choice of Forum Warrants Only Limited Weight ............... 10

   C.  The Cause of Action Did Not Arise in Texas and Has Substantial Ties to Delaware ...................................................................................... 11

   D.  The Convenience of the Parties Does Not Favor Transfer ...................... 12

   E.  Defendants Have Not Shown That Any Witness Is Unavailable In This District ............................................................................................. 13

   F.  The Location of Books and Records Offers No Support For Transfer .................................................................................................. 16

 III.  The Public Interest Factors Weigh Against Transfer ........................................... 17

   A.  Practical Considerations Favor Keeping this Case in Delaware ............... 17

   B.  Administrative Concerns Do Not Favor Transfer .................................... 17

   C.  The Proposed Acquisition Concerns National—Not Local— Interests ................................................................................................... 19

CONCLUSION ......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001) ........................................ 12

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998) ............................................ 14

*CNH Am. LLC v. Kinzenbaw*, No. 08–945-GMS, 2009 WL 3737653 (D. Del. Nov. 9, 2009) ........................................................................................................................................ 10

*Cruise Control Techs. LLC v. Chrysler Group LLC*, No. 12-1755-GMS, 2014 WL 1304820 (D. Del. Mar. 31, 2014) ................................................................................................ 16

*Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14–1432, 2015 WL 4967139 (D. Del. Aug. 20, 2015) ................................................................................................................. 15, 16

*FastVDO LLC v. Paramount Pictures Corp.*, 947 F. Supp. 2d 460 (D. Del. 2013) ..................... 17

*FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21 (D.D.C. 2008) ......................................................... 20

*Good Tech. Corp. v. AirWatch, LLC*, No. 14-1092-LPS-CJB, 2015 WL 296501 (D. Del. Jan. 21, 2015) ......................................................................................................................... 8

*Graphics Properties Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320 (D. Del. 2013) ............................................................................................................................ 13

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012) ................. 8, 10

*Human Genome Sciences, Inc. v. Genentech, Inc.,* No. 11-082-LPS, 2011 WL 2911797 (D. Del. Jul. 18, 2011) .................................................................................................... 8

*Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012) ....... 9, 10, 12, 14

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472 (D. Del. 2011) ............................................................................................................................ 13

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014) .................................................................................................... 10, 19

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) .................................................. passim

*Lee v. Ply\*Gem Indus., Inc.*, 593 F.2d 1266 (D.C. Cir. 1979) ...................................................... 10

*McKee v. PetSmart, Inc.*, No. 12-1117-SLR-MPT, 2013 WL 1163770 (D. Del. Mar. 20, 2013) .................................................................................................................................. 9, 14

*Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.,* No. 14-874-SLR-SRF, 2015 WL 4036951 (D. Del. Jul. 1, 2015) ........................................................................................ 8, 9

*Quest Integrity USA, LLC v. Clean Harbors Indus. Svcs., Inc.*, 114 F. Supp. 3d 187 (D. Del. 2015) ..................................................................................................................... 15, 16

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) .............................................................. 7

*Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718 (D. Del. 2012) ............................ 15

*Textron Innovations, Inc. v. The Toro Co.,* No. 05-486-GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005) ........................................................................................................... 18

*TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA-MPT, 2012 WL 5289782 (D. Del. Oct. 25, 2012) ...................................................................................... 12, 13

*TSMC Tech., Inc. v. Zond, LLC*, No. 14-721-LPS-CJB, 2015 WL 328334 (D. Del. Jan. 26, 2015) ......................................................................................................... 4, 9

*United States v. Brown Univ.*, 772 F. Supp. 241 (E.D. Pa. 1991) ........................................... 4, 10

*United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74 (D.D.C. 2011) ........................... 11, 12, 20

*United States v. Nat'l City Lines, Inc.*, 334 U.S. 573 (1948) ........................................................ 10

**Statutes**

15 U.S.C. § 18 ............................................................................................................................. 1, 11

15 U.S.C. § 22 ........................................................................................................................ 4, 9, 10

15 U.S.C. § 23 ................................................................................................................................. 14

## NATURE AND STAGE OF THE PROCEEDINGS

The United States filed this antitrust action for injunctive relief to prevent Halliburton

Company from acquiring Baker Hughes Incorporated.  The United States alleges that this merger

would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, because it would combine two of the

three largest providers of oilfield services in the world, it would eliminate substantial head-to-

head competition, and it would likely lead to higher prices and less innovation.[1]  Compl. ¶ 1 (D.I.

1).  The Complaint alleges that the merger would substantially lessen competition in 23 product

and service markets throughout the United States.  *Id.* ¶¶ 11, 14.  It also alleges that Halliburton's

attempt to remedy this violation of law by selling a collection of assets to a third party would fall

far short of preserving competition.  *Id.* ¶¶ 8-10, 73-79.

The Complaint was filed on April 6, 2016.  Later that day, counsel for Halliburton and

Baker Hughes advised counsel for the United States that Defendants would be filing a motion to

transfer venue to the Southern District of Texas.  Defendants filed their motion on April 8, 2016,

and requested an expedited briefing schedule, which Judge Sleet granted.  Defendants' transfer

motion is wrong on the law, incomplete in its recitation of the facts, and falls far short of the

showing needed to prevail on a transfer motion.

In their motion for expedited briefing, Defendants claimed an emergency because they

each have a right to terminate their merger agreement as of April 30, 2016, a little over two

weeks from now.  Defendants' agreement also gives Baker Hughes the right to receive a $3.5

billion breakup fee upon termination.  This was one of the financial incentives that Halliburton

---

[1] Section 7 of the Clayton Act prohibits acquisitions "where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.

offered to persuade Baker Hughes to attempt a merger that both Defendants recognized from the outset had tremendous antitrust risk that might not be solvable.  Compl. ¶ 7 (D.I. 1).

There is no emergency here because Defendants are legally prohibited from completing their merger by European authorities, a fact not mentioned in Defendants' papers.  As described in the attached Declaration of Blake W. Rushforth, the current timeline in Europe goes to August – Defendants delayed for over a year before completing their required notification to the European Commission – and presumably could be extended further.  Rushforth Decl. ¶¶ 2-3.  At the conclusion of that process, the merger could be prohibited under European law.  The merger is also undergoing reviews in at least Brazil, Mexico, and Australia.  (Defendants can provide the Court with information about the timing of the processes there, as well as any other jurisdiction where a review might still be pending.)

Defendants contracted for certain termination rights between themselves, moved slowly to comply with the antitrust review process both in the United States and abroad, and now find themselves unable to close their merger before they are allowed to exercise their contractual rights, regardless of what happens in this action.  This should not provide grounds for exceptional treatment from the Court.  After April 30, Defendants either will terminate their merger agreement, which would render the case moot; or they will continue to pursue approvals in other countries, in which case this action can be resolved by this Court in an orderly fashion.

## SUMMARY OF ARGUMENT

> Each of the parties hereto … agrees that it will not bring any action
> arising out of, relating to or in connection with this Agreement or
> any of the transactions contemplated by this Agreement in any
> court other than the courts of the State of Delaware.[2]

1.      Though not discussed in Defendants' papers, this provision appears in the merger

agreement that is at the heart of this lawsuit.  Defendants agreed that any litigation between them

over the merger agreement must be brought in Delaware.  If, for example, Baker Hughes sued

Halliburton for failing to use reasonable efforts to obtain antitrust approvals for the merger or to

collect its $3.5 billion breakup fee, it would be required to bring that lawsuit in Delaware.  But

when the United States challenges the merger, Defendants profess dismay that they might have

to litigate here.

2.      Defendants and their merger have other significant connections to Delaware.  Both

Defendants are incorporated in this State.  The merger agreement is governed by Delaware law.

Defendants used Delaware counsel to work on the agreement and related securities filings.  The

very transaction at issue in this case is to be completed by filing a certificate of merger with the

Secretary of State of Delaware.  In other words, the act that would complete the merger and

thereby give rise to the violation of Section 7 of the Clayton Act as alleged in the Complaint

would occur in Delaware when the certificate of merger is filed here.  Halliburton has created a

subsidiary under Delaware law to facilitate the completion of the merger.  Defendants have been

litigating for over a year in Delaware courts to defend themselves from shareholder suits arising

out of the merger agreement.

3.      In deciding whether Defendants have met their heavy burden of showing that transfer is

warranted, the Court's analysis follows the familiar multi-factor test set forth in *Jumara v. State*

---

[2] Merger Agreement, § 10.4(b), Ex. 5 to Ketchum Decl., at A-87 to A-88.

*Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).  Both the private interest and public interest factors under *Jumara* weigh in favor of Delaware.

4.      With respect to private interest factors, the United States' choice of forum is afforded "substantial weight" because it brought this action in Delaware for "legitimate and rational reasons."  *TSMC Tech., Inc. v. Zond, LLC*, No. 14-721-LPS-CJB, 2015 WL 328334, at *1 (D. Del. Jan. 26, 2015).  Moreover, because Section 12 of the Clayton Act, 15 U.S.C. § 22, broadened venue in antitrust cases to make it easier for plaintiffs, including the United States, to bring cases, the United States' choice of forum has been given "heightened respect."  *United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991).

5.      Defendants' choice of forum, on the other hand, should be afforded little if any weight here as Defendants are major global corporations that have chosen Delaware as their state of incorporation and as their preferred forum for litigating disputes relating to their merger agreement.  The cause of action – a challenge to a merger that would harm competition in at least 23 nationwide markets – did not arise in Texas and in fact has substantial ties to Delaware, the locus of the corporate entities and acts that would effectuate the merger.  Given Defendants' size and scope of operations throughout the world, they cannot claim their own convenience as a reason for transfer.  Nor have they even attempted to show that any witness would be unavailable for trial in Delaware, which is the correct standard under *Jumara*.  And the location of books and records, which can easily be sent to Delaware in electronic form, provides no basis for transfer.

6.      With respect to public interest factors, practical considerations point to Delaware, which is convenient for the Justice Department and for Defendants' lawyers.  Denying transfer would also avoid delay in a case in which Defendants would like an accelerated trial schedule.  On the question of administration and congestion, workload statistics are ambiguous and this factor is

neutral.  Finally, contrary to Defendants' suggestion, this antitrust enforcement case involving alleged effects on national markets does not focus on local interests.

7.      For these reasons, as well as those discussed below, Defendants' motion for transfer should be denied.

## STATEMENT OF FACTS

Halliburton is a Delaware corporation.  Halliburton, Annual Report (Form 10-K) (Feb. 5, 2016), Ex. 1 to Ketchum Decl., at 1.  All but one of Halliburton's significant U.S. subsidiaries were formed under Delaware law.  *Id.* at Exhibit 21.1.

Halliburton is the second-largest provider of oilfield services in the world.  It provides oilfield services to energy companies and oil fields located throughout the world via a "global infrastructure" with "significant manufacturing operations in various locations, including the United States, Canada, China, Malaysia, Singapore, and the United Kingdom." *Id*. at 1.   In 2015, revenue from Halliburton's global operations totaled $23.6 billion.  *Id*. at 45.  Halliburton has a "Global Footprint."  Ex. 2 to Ketchum Decl.

Baker Hughes is also a Delaware corporation.  Baker Hughes, Annual Report (Form 10-K/A) (Feb. 19, 2016), Ex. 3 to Ketchum Decl., at 2.  All but one of Baker Hughes' significant U.S. subsidiaries were formed under Delaware law.  *Id*. at Exhibit 21.1.

Baker Hughes is the third-largest provider of oilfield services in the world.  Like Halliburton, it supplies oilfield services to the "worldwide oil and natural gas industry," operating "in more than 80 countries around the world." *Id*. at 2.  In 2015, Baker Hughes earned $15.7 billion in revenue from its global operations.  *Id*. at 44.  Baker Hughes also has a "Global footprint."  Ex. 4 to Ketchum Decl.

The proposed merger that is the subject matter of the lawsuit has substantial ties to Delaware.  The merger agreement is governed by Delaware law.  § 10.4(a), Ex. 5 to Ketchum Decl., at A-87.  Under the merger agreement, the Defendants agreed to litigate exclusively in Delaware courts "any dispute arising out of, relating to or in connection with" the merger agreement or "any of the transactions" contemplated thereby.  § 10.4(b), Ex. 5 to Ketchum Decl., at A-87 to A-88.[3]

The proposed merger is to be effected in accordance with the Delaware General Corporation Law and the Delaware Limited Liability Company Act.  § 1.1, Ex. 5 to Ketchum Decl., at A-2.  The merger would be accomplished by using a Delaware company, Red Tiger LLC, which Halliburton created for the sole purpose of consummating the merger.  Halliburton/Baker Hughes, Joint Proxy Statement/Prospectus (Form 424B3/Schedule 14A) (Feb. 18, 2015), Ex. 5 to Ketchum Decl., at 41.  "The merger will become effective upon the filing of the certificate of merger with the Secretary of State of the State of Delaware . . . ."  *Id.* at 127.

Baker Hughes' corporate by-laws contain a forum selection clause requiring shareholder suits to be filed in Delaware courts.  *Id.* at 167.  Baker Hughes has already submitted to the jurisdiction of the Delaware courts to defend itself, its CEO, and its directors in shareholder suits arising out of its merger agreement with Halliburton.  *Id.* at 116.  Halliburton and its subsidiary, Red Tiger LLC, are defendants in at least one of those suits as well.  Ex. 12 to Ketchum Decl.[4]

Defendants' proxy statement reveals that part of the merger negotiation took place in Washington, D.C. ("On October 30, our respective antitrust legal teams and general counsels met

---

[3] There is a narrow carve-out for any actions by Defendants against a financing source; such actions must be brought in New York.  *Id.* § 10.4(c), Ex. 5 to Ketchum Decl., at A-88.

[4] On the same day that Defendants filed their motion for transfer of this litigation, Halliburton filed a letter with the Chancery Court notifying the court of a settlement, which is contingent on the consummation of the transaction that is the subject of the government's antitrust action.  *Id.*

in Washington DC . . . for about six hours"). *Id.* at 60. And the negotiation and drafting of the

merger agreement involved investment banks and lawyers based in New York, Washington, and

Delaware. *Id.* at 53-72.

Defendants' brief asserts that "[b]oth parties are headquartered in Houston, Texas," and

that the Southern District of Texas is more convenient for party witnesses, including "[h]igh-

ranking officers of Halliburton and BHI, such as the Chief Executive Officers." Defs.' Br. at 10,

15 (D.I. 6). But Halliburton has dual headquarters: it announced several years ago "the opening

of a corporate headquarters office in the United Arab Emirates" and that "Halliburton Chairman,

President and Chief Executive Officer Dave Lesar will move to Dubai." Ex. 6 to Ketchum Decl.

Halliburton's website lists Mr. Lesar's current address as Dubai (Ex. 7 to Ketchum Decl.) and

Halliburton business documents identify Halliburton's "Corporate Headquarters" as Houston *and*

Dubai. Ex. 2 to Ketchum Decl.

Defendants assert that "Halliburton's and BHI's facilities are likewise predominantly

located in Houston, Texas," Defs.' Br. at 15 (D.I. 6). But Halliburton has just 8% of its U.S.

physical locations in the Houston area; Baker Hughes similarly has 8%. Ketchum Decl. ¶¶ 15-

16. Defendants have at least 50,000 and 39,000 employees, respectively, approximately 90% of

whom are located outside of the Houston area. *See* Bellotti Decl. ¶ 3 (D.I. 7); Whitley Decl. ¶ 5

(D.I. 8).

## ARGUMENT

## I.      Defendants Must Overcome a Heavy Burden to Set Aside the Substantial Deference Accorded to Plaintiff's Choice of Forum

The transfer analysis begins with the principle of "black letter law that a plaintiff's choice

of a proper forum . . . should not be lightly disturbed" and transfer is "not to be liberally

granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal citations

omitted).  Accordingly, the moving party bears the burden to establish that "the balance of convenience of the parties is *strongly* in favor" of transfer, and, absent such showing, "the plaintiff's choice of forum should prevail." *Id.* (emphasis added).

The moving party's burden is a "heavy one."  *Good Tech. Corp. v. AirWatch, LLC*, No. 14-1092-LPS-CJB, 2015 WL 296501, at *3 (D. Del. Jan. 21, 2015).  Accordingly, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer."  *Id.* Moreover, "[u]nless the defendant 'is truly regional in character'—that is, it operates essentially exclusively in a region that does not include Delaware—transfer is almost always inappropriate." *Human Genome Sciences, Inc. v. Genentech, Inc.,* No. 11-082-LPS, 2011 WL 2911797, *2 (D. Del. Jul. 18, 2011) (quoting Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004)).  Here, Defendants have failed to establish that any of the relevant private or public interest factors set forth by the Third Circuit weigh strongly in favor of transfer. *See Jumara*, 55 F.3d at 879.[5]

## II.      The Private Interest Factors Weigh Against Transfer

### A.      The United States' Choice of Forum is Accorded Substantial Deference

Courts have long recognized that a plaintiff "generally has been 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick,* 349 U.S. 29, 31 (1955)). Accordingly, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason."  *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.,* No. 14-874-SLR-SRF, 2015 WL 4036951, at *3 (D. Del. Jul. 1, 2015)

---

[5] The United States does not dispute that this case could have been brought in the Southern District of Texas.

(internal citations omitted).  Where a plaintiff's choice of forum is "legitimate and rational," this choice is given "substantial weight in the [transfer] analysis."  *TSMC*, 2015 WL 328334, at *1.

Here, the United States' choice to bring suit in Delaware is legitimate and rational. Defendants (and most of their U.S. subsidiaries) are incorporated in the state of Delaware.  The Court also has personal jurisdiction over Defendants under the Clayton Act because each is an "inhabitant" of this state.  15 U.S.C. § 22.  These facts alone are "legitimate and rational reasons for suing in Delaware."  *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012).  Defendants have also availed themselves of the "rights, benefits, and obligations afforded by Delaware law," *Merck*, 2015 WL 4036951, at *3, and "having received the benefits of Delaware incorporation, should not now complain that [plaintiff] has chosen to sue [them] here," *McKee v. PetSmart, Inc.*, No. 12-1117-SLR-MPT, 2013 WL 1163770, at *2 (D. Del. Mar. 20, 2013).

There is also a substantial connection between Delaware and the merger at issue in this case.  It is an agreement between two Delaware corporations, effectuated under Delaware law, in which Defendants agreed that Delaware is a proper venue for all merger-related litigation between them.  Defendants are simply wrong when they claim that "[t]his matter has no meaningful ties to the District of Delaware." [6]  Defs.' Br. at 7 (D.I. 6).

Delaware is also convenient to the Antitrust Division's headquarters in Washington, and is the closest forum in which personal jurisdiction and venue are indisputably proper over both

---

[6] Defendants' current claim that Delaware has little to do with the merger is hard to square with their position during the investigation.  Then, when a question arose about privilege of investment banker documents held in New York, lead counsel for Halliburton argued that Delaware privilege law applied for the reason that "the HAL/BHI merger agreement selects Delaware law for the resolution of all disputes under the contract."  Ex. 8 to Ketchum Decl.

Defendants.  *See Helicos*, 858 F. Supp. 2d at 373 (recognizing as a "legitimate" reason to file suit in Delaware that "Delaware is a venue close" to plaintiff's location).

Finally, the United States' choice of venue in antitrust enforcement actions is given "heightened respect."  *Brown Univ.*, 772 F. Supp. at 242 (denying transfer of government antitrust enforcement action).  Congress enacted Section 12 of the Clayton Act, 15 U.S.C. § 22, to broaden the general federal venue statute and make it easier for plaintiffs, including the United States, to obtain relief for violations of the antitrust laws.  *United States v. Nat'l City Lines, Inc.*, 334 U.S. 573, 581 (1948).  Section 12 "is a special venue provision tailored for corporate antitrust defendants, whose convenience Congress was not particularly solicitous of."  *Lee v. Ply\*Gem Indus., Inc.*, 593 F.2d 1266, 1272 (D.C. Cir. 1979).

## B. Defendants' Choice of Forum Warrants Only Limited Weight

"Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference."  *Altera Corp.*, 842 F. Supp. 2d at 755; *see also Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824-GMS, 2014 WL 4829027, at \*3 (D. Del. Sept. 25, 2014) (finding this factor to be "only given limited weight").  As a result, Defendants' forum preference "is not sufficient to displace the plaintiff's own choice of venue."  *CNH Am. LLC v. Kinzenbaw,* No. 08–945-GMS, 2009 WL 3737653, at \*2 (D. Del. Nov. 9, 2009).

This principle carries even greater force here, as Defendants' choice of forum contradicts the preference for Delaware that they have repeatedly expressed by incorporating here, negotiating a Delaware forum selection clause in their merger agreement, and imposing a Delaware forum selection clause on shareholders in Baker Hughes' corporate by-laws. Moreover, Defendants' choice should carry little weight given that both are global companies,

most of their employees and facilities are not in Houston, and one of the companies, Halliburton, maintains a corporate headquarters in Dubai, where its CEO is located.

### C.   The Cause of Action Did Not Arise in Texas and Has Substantial Ties to Delaware

Defendants place considerable emphasis on the claim that their merger agreement was "negotiated, drafted, and executed in Houston" and that Houston is "the true epicenter of the activities leading up to and resulting in the merger agreement." Defs.' Br. at 4, 9 (D.I. 6). But negotiations and drafting are not the antitrust violation here. The violation of the Clayton Act would arise from the substantial lessening of competition in 23 markets caused by the *acquisition* of Baker Hughes by Halliburton. 15 U.S.C. § 18. The acquisition will occur in Delaware when the certificate of merger is filed with the Delaware Secretary of State, and the effects of the merger will be felt nationwide.

In *United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 80 (D.D.C. 2011), the court rejected the notion that a Clayton Act claim arose in the forum where the merger agreement was negotiated, in light of the "national market implicated by this case." Even though "the conduct of the defendants in planning and negotiating the proposed acquisition . . . emanated from the defendants' corporate headquarters in Kansas City, Missouri and Cedar Rapids, Iowa," that fact was not "sufficient to override the substantial deference to which the plaintiff's choice of venue is entitled." *Id.*[7]

---

[7] Even if the locus of negotiations were important to the analysis, Defendants' claim that the agreement was negotiated and drafted "in Houston" is exaggerated. Defs.' Br. at 9 (D.I. 6). The merger agreement was negotiated at least in part in Washington, D.C., and Defendants retained attorneys, financiers, and antitrust experts in Wilmington, New York, and Washington to help them negotiate and draft the transactional documents. Ex. 5 to Ketchum Decl., at 53-72.

**D.      The Convenience of the Parties Does Not Favor Transfer**

The next *Jumara* factor is the "convenience of the parties as indicated by their relative physical and financial condition." 55 F.3d at 879. It is "appropriate to factor in the parties' states of incorporation in evaluating the convenience of the parties' private interest." *Altera*, 842 F. Supp. 2d at 756. There is a "long line of decisions from this District, which make plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Id.*; *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.").

Defendants' uphill climb is even steeper where, as here, they have agreed on a forum selection clause requiring litigation relating to the merger agreement to take place in Delaware. *See Jumara*, 55 F.3d at 880 ("[A] forum selection clause is treated as a manifestation of the parties' preference as to a convenient forum."). Defendants have offered no reason why Delaware is a convenient forum for litigating merger-related disputes between themselves but not against the government. In *H&R Block*, defendants' merger agreement contained a "forum selection clause calling for any disputes over the merger agreement between the defendants to be litigated in Delaware." 789 F. Supp. 2d at 81. The Court concluded that this clause negated the defendants' claim of inconvenience: "[w]hile the merger agreement's Delaware forum selection clause is not at issue in this case, the fact that the defendants negotiated and agreed to such a clause indicates their ability to avail themselves of legal protections offered by different fora around the country—including fora remote from their home districts." *Id.*

12

Moreover, in cases involving global corporations with revenues in the billions of dollars, courts have been unpersuaded that litigation in Delaware poses any "undue financial burden." *Graphics Properties Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328-29 (D. Del. 2013); *see also Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 481 (D. Del. 2011) (finding it "implausible" that litigating one dispute in Delaware would "significantly disrupt" the operations of defendants, each of which was "a global corporation, employing at least 1,000 people, and earning annual revenues in excess of $1 billion"); *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA-MPT, 2012 WL 5289782, at *5 (D. Del. Oct. 25, 2012) ("Neither party's [convenience] argument is persuasive as this case involves two multi-national corporations, both proclaiming to have interests and activities spanning the globe.").

Defendants have failed to meet their burden to demonstrate inconvenience. Both Defendants are large multi-billion dollar companies transacting business on a daily basis throughout the United States and in 80 countries around the world. They are proposing to enter into a $35 billion merger transaction. There is no dispute that Defendants have financial resources that are more than adequate to litigate in this District. Defendants have offered "nothing in the record that demonstrates that litigating in either forum-at-issue would impose a serious or undue logistical or financial burden." *TruePosition*, 2012 WL 5289782, at *5 (quoting *Fuisz Pharma LLC v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *13 (D. Del. May 18, 2012)).

### E.      Defendants Have Not Shown That Any Witness Is Unavailable In This District

Defendants spend a major portion of their brief discussing the convenience of potential witnesses, but fail to address the controlling legal standard or make any effort to provide

evidence to meet that standard.  When properly analyzed, the convenience of witnesses is a neutral factor that provides no support for transfer here.

First, Defendants argue that Houston "is a substantially more convenient location for all … party witnesses expected to be called in this case."  Defs.' Br. at 10 (D.I. 6).  As examples, they list the CEOs of both companies and various Vice Presidents of particular business lines. *Id.*  However, Defendants' brief ignores the caselaw, which holds that "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998); *see also Altera*, 842 F. Supp. 2d at 756-57 (citing *Affymetrix* standard); *McKee*, 2013 WL 1163770, at *4 (same). The convenience of Defendants' executives and other employees is not a factor in the *Jumara* analysis.[8]

With respect to third-party witnesses, Defendants make extensive arguments about the location of certain customers and their distance to Delaware.  However, their brief fails to acknowledge that, under *Jumara*, the court considers third-party witness convenience "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  Here, there is no issue of unavailability: in antitrust cases brought by the United States, Congress has provided for nationwide service of trial subpoenas.  15 U.S.C. § 23

---

[8] Defendants omitted important facts about their own executives, including: (1) the CEO of Halliburton is based in Dubai, United Arab Emirates (Ex. 7 to Ketchum Decl.); (2) Halliburton's Completion Tools business, which is responsible for seven of the product markets at issue in this case, is based in Singapore (Ex. 11 to Ketchum Decl.); and (3) the President of Halliburton's Western Hemisphere businesses is in Denver, Colorado (Ex. 7 to Ketchum Decl.).  Moreover, by Defendants' own admission, over 45,000 of Halliburton's 50,000 employees work outside of the Houston area, as do more than 32,000 of Baker Hughes' 39,600 employees.  Bellotti Decl. ¶ 3 (D.I. 7); Whitley Decl. ¶ 5 (D.I. 8).  Thus, contrary to the implication in Defendants' brief, Halliburton and Baker Hughes are global companies, not local Houston companies, with many thousands of employees all over the world.

(providing that subpoenas "may run into any other district").  Third-party witnesses will likely be as available for trial in Delaware as they are in Houston.

Defendants have not identified with particularity any third-party witness they plan to call at trial, much less established that any witness would be unavailable.  Defendants fail to document any reasons for unavailability beyond speculating that traveling to Delaware for trial is "likely" to cause "disruption."  Defs.' Br. at 12 (D.I. 6).  Defendants offer no declarations or any other evidence on this point.  "It is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case."  *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (quoting *Tessera, Inc. v. Sony Electronics Inc.*, No. 10–838, 2012 WL 1107706, at *6 (D. Del. March 30, 2012)).  To meet this burden, "the movant must provide specificity as to: (1) the particular witness to whom the movant is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will 'actually' be unavailable for trial (as opposed to the proffer of a guess or speculation on that front)."  *Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14–1432, 2015 WL 4967139, at *8 (D. Del. Aug. 20, 2015).  Defendants have established none of these elements.

The mere fact that Houston is close to some potential witnesses is of little relevance.  In a recent transfer motion involving the oil industry, the movants made a similar argument that "Houston is within driving distance for any potential third-party witnesses who live in Texas or Louisiana."  *Quest Integrity USA, LLC v. Clean Harbors Indus. Svcs., Inc.*, 114 F. Supp. 3d 187, 191 (D. Del. 2015).  In denying the transfer motion, the Court held that, "[a]lthough it is possible that the Southern District of Texas is a more convenient forum than Delaware for some witnesses, defendants have not indicated that *any particular witness* who may be called upon to

testify at trial would be unwilling to do so." *Id.* (emphasis added).  Defendants' vague and speculative convenience claim must fail here for the same reason.

Finally, Defendants' brief exaggerates the ties between its customers and Houston. Certainly the oil industry has a significant presence in the Houston area.  But Defendants and their large customers are global corporations with operations extending well beyond Houston and the Southern District of Texas.  The mileage chart included in Defendants' brief (Table 1) is similarly misleading.  Defs.' Br. at 12 (D.I. 6).  For example, Defendants inaccurately list Houston as the corporate headquarters for British Petroleum and Shell when the actual corporate headquarters of those companies are in the United Kingdom and the Netherlands, respectively.[9] Exs. 9 and 10 to Ketchum Decl.

### F.    The Location of Books and Records Offers No Support For Transfer

Defendants' argument about the location of documents is likewise unavailing.  Defs.' Br. at 13 (D.I. 6).  Defendants overlook the caselaw holding that the location of books and records "is relevant only where Defendants show that there are books and records that cannot be transported or transmitted to Delaware."  *Cruise Control Techs. LLC v. Chrysler Group LLC*, No. 12-1755-GMS, 2014 WL 1304820, at *4 (D. Del. Mar. 31, 2014).  Defendants have made no such showing here.  Moreover, "consistent with the realities of modern technology," courts grant this factor little weight because "virtually all businesses maintain their books and records in electronic format readily available for review and use at any location."  *Quest*, 114 F. Supp. 3d at 191; *see also Elm 3DS*, 2015 WL 4967139, at *9-10.  Defendants offer no reason to conclude otherwise here.  In fact, during the merger investigation, Defendants electronically produced

---

[9] Companies that use the services of Defendants in the United States are, like Defendants, located in many places.  For example, Halliburton prepared a list of customers drilling wells in the deepwater Gulf of Mexico; it showed that 8 of the top 10 have headquarters in places other than Houston, including four that are overseas.  Ketchum Decl. ¶ 17.

many documents to the Antitrust Division in Washington, D.C.  It will be no more difficult to produce documents in Wilmington than in Houston.  Accordingly, the location of books and records is a neutral factor.

### III.     The Public Interest Factors Weigh Against Transfer

#### A.     Practical Considerations Favor Keeping this Case in Delaware

In evaluating the "practical considerations that could make the trial easy, expeditious, or inexpensive" (*Jumara*, 55 F.3d at 879), courts typically consider the relative expense and ease for each party of litigating in this District as compared to the transferee forum.  *See, e.g.*, *FastVDO LLC v. Paramount Pictures Corp.*, 947 F. Supp. 2d 460, 463 (D. Del. 2013).  Defendants' brief makes no effort to address this factor.

As discussed above, litigating this action in Delaware would impose no meaningful burden on Defendants, as they are both large global corporations with strong existing ties to this District.  Defendants would not have selected Delaware in the forum selection clause of the merger agreement if the practical considerations of litigating here posed any real problem for them.  Moreover, Defendants' non-local outside counsel are based nearby in Washington and New York City.  None of the 18 lawyers listed in Defendants' brief is in Texas.  By contrast, transferring this action to the Southern District of Texas would impose higher travel and other costs on the United States.  Transfer would also delay the prompt resolution of this action, which Defendants insist is of great importance to them.  Practical considerations therefore weigh against transfer.

#### B.     Administrative Concerns Do Not Favor Transfer

The relative docket congestion statistics cited by Defendants do not favor transfer to the Southern District of Texas.  While the average time from filing to disposition or trial may be

longer in the District of Delaware, the number of cases filed per judgeship is significantly higher in the Southern District of Texas than in the District of Delaware (745 versus 381 actions per judgeship), the number of civil actions per judgeship in the two Districts is comparable (318 versus 358 civil actions per judgeship), and the number of trials completed was almost identical (22 versus 20 per judgeship). *Federal Court Management Statistics*, U.S. Courts (Jun. 2015). The number of pending cases in Delaware has dropped significantly over the past two years (from 727 to 523) while the number in Houston has stayed about the same. From this mixed statistical evidence, it is by no means clear that the Southern District of Texas is meaningfully less congested than the District of Delaware or that transfer would lead to a speedier disposition of this action. *See Textron Innovations, Inc. v. The Toro Co.,* No. 05-486-GMS, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer.").

Moreover, the average time to trial is not instructive in this case, where Defendants seek an accelerated trial schedule rather than the typical timeframe for a civil case. Defendants have provided no information from which this Court can assess whether the Southern District of Texas would be better able to accommodate an accelerated schedule than the District of Delaware.[10] Thus, this factor is neutral.

---

[10] The Southern District of Texas maintains a substantial docket of criminal felony cases (340 cases as of June 2015, compared to 15 in Delaware), resulting in scheduling issues because of the constitutional and Speedy Trial Act mandates that criminal cases take precedence over civil cases. Defendants made no attempt to consider this fact in their congestion argument.

## C.  The Proposed Acquisition Concerns National—Not Local—Interests

In arguing that this case concerns local interests, Defendants claim that their facilities "are predominantly located in Houston, Texas."  Defs.' Br. at 15 (D.I. 6).  However, the declarations cited do not provide any support for this proposition.  To the contrary, based on data supplied by Defendants during the Justice Department's investigation, over 90% of Defendants' U.S. facilities are located outside the Houston metropolitan area.  Ketchum Decl. ¶¶ 15-16.  Likewise, approximately 90% of Defendants' employees work outside the Houston area.  Bellotti Decl. ¶ 3 (D.I. 7); Whitley Decl. ¶ 5 (D.I. 8).[11]

Defendants also argue that there is a local interest at stake here because Defendants have corporate offices in Houston.  However, "[a] district does not have a local interest in resolving litigation simply by virtue of having one of the parties present there.  To hold otherwise would be to give undue weight to the location of the parties, which has already been accounted for in the private interest factors."  *Ithaca Ventures*, 2014 WL 4829027, at *7.  Thus, the location of Defendants' headquarters is not a relevant public interest factor.

Defendants' effort to paint a picture of this case as narrowly limited to "two Houston-based corporations" and affecting only the "Texas economy" and Texas' "public interest" mischaracterizes the issues at stake.  Defs.' Br. at 2, 15 (D.I. 6).  The Complaint alleges that Halliburton and Baker Hughes "compete with each other for customers located throughout the United States" and that the proposed merger would have nationwide effects on competition.  Compl. ¶¶ 14, 83 (D.I. 1).  Oilfield services is a "critically important industry" and the proposed merger poses a risk to competition that would affect the "U.S. economy, American consumers,

---

[11] Halliburton's 10-K lists 20 "locations [that] represent our major facilities by segment" and only two are in the Houston area.  Ex. 1 to Ketchum Decl. at 17.

and those who engage in the production of energy consumed in the United States. . . ."  *Id.* ¶¶ 1,

3.  For all 23 markets in the Complaint, the geographic market is "the United States."  *Id.* ¶ 14.

Thus, the "local interest in deciding local controversies" factor is irrelevant here because "this case has national economic significance and does not present an essentially local matter."  *H&R Block*, 789 F. Supp. 2d at 83.  Even one of the cases cited by Defendants holds that an antitrust enforcement action by the government does not present issues unique to any one district; in fact, "it is not a local issue at all," but one with "nationwide significance."  *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31 (D.D.C. 2008).

## CONCLUSION

For the foregoing reasons, defendants have failed to meet their burden to overcome the substantial deference due the United States' choice of forum.  Accordingly, their motion should be denied.[12]

Respectfully Submitted,

| | |
|---|---|
| David I. Gelfand | /s/ Jennifer Hall |
| John R. Read | Jennifer Hall (#5122) |
| Craig W. Conrath | Assistant United States Attorney |
| Bennett J. Matelson | United States Attorney's Office |
| Leah E. Graham | 1007 Orange Street, Suite 700 |
| United States Department of Justice | Wilmington, DE 19801 |
| Antitrust Division | Telephone: (302) 573-6277 |
| 450 Fifth Street, NW | Email: jennifer.hall@usdoj.gov |
| Washington, DC 20530 | |
| Telephone: (202) 514-0731 | *Attorneys for Plaintiff* |
| Email: david.gelfand@usdoj.gov | *United States of America* |

Dated:  April 13, 2016

---

[12] If the Court wishes to hear oral argument, the United States respectfully requests that it not be scheduled during the week of April 18-22, 2016, as lead counsel has a long-planned family vacation out of the country.

20